IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

DR. SHERILONDA GREEN,          *
    Plaintiff,              *
                              *
    v.                       *
                              *   CV 522-053
CHARLTON COUNTY SCHOOL          *
DISTRICT, et al.,               *
                              *
    Defendants.             *
                              *

## O R D E R

Presently pending before the Court is Defendants' motion to dismiss Plaintiff's second amended complaint under the doctrine of res judicata. (Doc. 45.) For the following reasons, Defendants' motion is **GRANTED**.

## I. BACKGROUND

Plaintiff filed her original complaint on September 9, 2022 (Doc. 1) and filed her first amended complaint on October 19, 2022 (Doc. 16). Defendants moved for a more definite statement and to strike immaterial allegations. (Doc. 20.) On September 11, 2023, the Court granted in part and denied as moot in part Defendants' motion, found the first amended complaint was a shotgun pleading and ordered Plaintiff to file a second amended complaint. (Doc. 36, at 10-11.) Plaintiff filed her second

amended complaint (hereinafter, the "Complaint") on September 25, 2023. (Doc. 40.) Plaintiff asserts four claims: (1) retaliation for opposing racially discriminatory employment practices in violation of the Civil Rights Act of 1866; (2) retaliation for participating in a proceeding in violation of the Civil Rights Act of 1866; (3) disparate treatment in violation of the Civil Rights Act of 1866; and (4) equal protection under the Fourteenth Amendment to the United States Constitution. (Id. at 30-40.) She brings all four claims against all Defendants in their official and individual capacities under 42 U.S.C. § 1983. (Id. at 1, 30-40.) Jurisdiction is proper based on 28 U.S.C. §§ 1331, 1343 because the controversy arises under the laws of the United States. (Id. at 3.) Venue is proper under 28 U.S.C. § 1391 because this is the district in which Defendants reside or do business and where a substantial part of the relevant events occurred. (Id.)

Plaintiff brings this civil rights action for damages and injunctive relief based on workplace conduct caused and perpetuated by the Charlton County School District (the "School District"), members of the Charlton County Board of Education ("BOE"), and the School District's former superintendent, Dr. John Lairsey. (Id. at 2.) Plaintiff seeks redresses for racially motivated conduct she experienced, and a charge of discrimination was pending before the United States Equal

Employment Opportunity Commission ("EEOC") as of the filing of the Complaint. (Id. at 2-3.)

Plaintiff, an African American female, is the Director of Human Resources and Student Services for the School District. (Id. at 4.) She has "devoted her entire life and the majority of her professional career to Charlton County Schools." (Id. at 6.) Plaintiff alleges the School District has a long history of subjecting African American educators, like her, to unlawful discrimination. (Id.) In 2022, Plaintiff sued the School District in the Superior Court of Charlton County (the "Superior Court") under the Georgia Open Records Act. (Id.) The Superior Court found the School District violated the Open Records Act. (Id. at 7.) Plaintiff states she "was forced to sue" the School District in the Superior Court "for hiding evidence of discrimination relating to the claims brought in this case." (Id. at 9.) The Superior Court held the "record is replete with evidence of systemic discrimination and discrimination against [Plaintiff] personally. The [Superior] Court [found Plaintiff's] testimony and evidence of systemic and personal discrimination compelling and relevant to establish motive" in the Superior Court action. (Id. (citation omitted).)

Plaintiff's employment history is as follows. Plaintiff first applied to the School District in June 1999 and was not hired. (Id. at 10-11.) Plaintiff spent six years as an

3

educator in another district, and in August 2006, she joined the School District as a second-grade teacher at Bethune Elementary. (Id. at 11.) In July 2008, she was named Assistant Principal at Folkston Elementary, which was later renamed Bethune Middle School. (Id.) In this role, she was second in command of forty-five people. (Id.) In July 2011, Defendant Lairsey was named Superintendent of the School District. (Id. at 12.) In May 2013, Plaintiff applied to be Principal at St. George Elementary School. (Id.) She interviewed with Defendant Lairsey but did not get the job. (Id.) In May 2015, Defendant Lairsey approached Plaintiff and informed her that he knew she wanted to be the next Principal of Bethune Middle School. (Id. at 13.) Since the Principal would not be retiring for three years, Defendant Lairsey encouraged her to apply to be Director of Exceptional Programs at the Central Office, and if she desired, she could return to Bethune Middle School when the Principal retired. (Id.) Plaintiff alleges Defendant Lairsey persuaded her to do this as a trick to not to apply to be Principal. (Id.) In July 2015, Defendant Lairsey transferred the Principal at Bethune Middle School and appointed a white male as Interim Principal. (Id.)

From July 2015 to present, Plaintiff has served as a Director and has been given more responsibility than anyone else for less pay. (Id. at 14.) She wears multiple hats, including:

4

Pre-K Director; Special Education Director; Title I Director; Title III Director; Teacher of the Year Coordinator; Technology Coordinator; Title IX Coordinator; Family School Partnership District Coordinator; Mental Health Coordinator; Positive Behavior Intervention and Supports District Coordinator; McKinney-Vento District Liaison; and Consolidated Application Coordinator. (Id. at 14-15.) Despite these different jobs, Plaintiff is consistently underpaid compared to white Directors and has been denied the enjoyment of all benefits, privileges, terms, conditions, and equal employment opportunities within her contract because she is African American. (Id. at 15.) Plaintiff alleges Defendants continue to impair her of her rights by denying her employment privileges and equal opportunities for employment. (Id. at 16.)

On April 30, 2019, the Principal position opened at Charlton County High School. (Id. at 17.) Plaintiff met with Defendant Lairsey about applying, but she also told him she was interested in becoming a superintendent and participating in the Superintendent Professional Development Program ("SPDP"). (Id.) Defendant Lairsey told Plaintiff the SPDP would open more doors for her and if she wanted to become a superintendent one day, that is the route he recommended. (Id.) Based on his recommendation, Plaintiff stayed in the Central Office and applied for the SPDP. (Id.) In September 2019, Defendant

Lairsey told Plaintiff he wanted to nominate her for the McIntosh County Superintendent position, and Plaintiff believes he tried to encourage this only because he knew he was retiring soon and wished to recommend a white male to replace him in the School District. (Id. at 18-19.)

On July 25, 2020, the Superintendent vacancy was announced for the School District. (Id. at 19.) The BOE hired King-Cooper & Associates ("KC&A") to assist with the search. (Id.) On August 3, 2020, Plaintiff called KC&A to find out the qualifications and job description and was denied the information. (Id.) On August 13, 2020, Plaintiff received a letter from KC&A stating she had been nominated as a candidate for Superintendent, but she was never interviewed. (Id. at 20.) On September 11, 2020, Plaintiff received an email from KC&A stating they received her application, and she had excellent qualifications, but she was never interviewed. (Id.) On September 25, 2020, the BOE met to decide who to interview. (Id. at 21.) On October 1, 2020, Plaintiff's Georgia Association of Educators ("GAE") representative, Velesa Henton, called KC&A to request the qualifications and job description for the Superintendent position, but they refused her. (Id.) On October 8, 2020, Plaintiff met with Defendant Lairsey to discuss his discrimination against her throughout the years, complain of discrimination, and confront him as to why she would

6

not be considered for an interview. (Id. at 21-22.)  The first round of Superintendent interviews took place on October 9, 2020, and the second round took place on October 11, 2020. (Id. at 22.)

On October 13, 2020, Plaintiff emailed Defendant Lairsey an open records request letter to obtain evidence of racial discrimination. (Id.)  She also submitted a letter to all Defendants, having it delivered to Defendant Lairsey and all members of the BOE, detailing her complaint of race discrimination. (Id.)  The same day, a white male was named the Superintendent finalist. (Id. at 23.)  On October 16, 2020, Plaintiff sent Defendant Lairsey a follow-up email asking when she would receive a response to her open records request, and she copied her GAE representative, but she received no response. (Id.)  On October 20, 2020, the BOE met, and Plaintiff asked a board member after the meeting if they were aware of her open records request and was informed Defendant Lairsey told the BOE about it. (Id. at 23-24.)  On October 29, 2020, the BOE held the final vote for a new Superintendent, and all voted for a white male. (Id. at 24.)

On November 4-6, 2020, Defendant Lairsey continued to deny Plaintiff the enjoyment of all benefits, privileges, terms, conditions, and equal employment opportunities of her contract. (Id.)  Defendant Lairsey allowed three white male administrators

7

to attend the Georgia Association of Educational Leaders ("GAEL") conference in Athens, Georgia but did not allow Plaintiff to attend because she complained of discrimination. (Id.)  Plaintiff alleges she was excluded from this conference in retaliation for making a race discrimination complaint.  (Id. at 25.)  She alleges individual board members began ostracizing her, ignoring her, visibly rolling their eyes, and displaying hostility when they saw her.  (Id.)  Defendants failed to produce responsive documents to her open records request to try to hide their overt acts of race discrimination and retaliation. (Id. at 26.)  Thus, as outlined above, Plaintiff sued the School District for violations of the Georgia Open Records Act.  (Id.)

Defendants move under Federal Rule of Civil Procedure 12(b)(6) to dismiss the Complaint under res judicata.  (Doc. 45.)  Plaintiff opposes the motion (Doc. 48), Defendants filed a reply brief (Doc. 52), Plaintiff filed a sur-reply (Doc. 53-2)[1], and Defendants filed a sur-reply (Doc. 55).  Thus, the motion has been fully briefed and is ripe for the Court's review.

## II. LEGAL STANDARD

In considering a motion to dismiss under Rule 12(b)(6), the Court tests the legal sufficiency of the complaint.  Scheuer v.

---

[1] Plaintiff filed a motion for leave/notice of intent to file her sur-reply. (Doc. 53.)  The Court considers Plaintiff's sur-reply (Doc. 53-2); thus, her motion for leave to file (Doc. 53) is **GRANTED**.

Rhodes, 416 U.S. 232, 236 (1974), *overruled on other grounds by* Davis v. Scherer, 468 U.S. 183 (1984).   Pursuant to Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant fair notice of both the claim and the supporting grounds.   Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).   Although "detailed factual allegations" are not required, Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555).

A plaintiff's pleading obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555.   "Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557).   The Court need not accept the pleading's legal conclusions as true, only its well-pleaded facts. Id. at 677-79.   Furthermore, "the court may dismiss a complaint pursuant to [Rule 12(b)(6)] when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist., 992 F.2d 1171,

1174 (11th Cir. 1993) (citing Exec. 100, Inc. v. Martin Cnty., 922 F.2d 1536, 1539 (11th Cir. 1991)).

"Under the federal full faith and credit statute, 28 U.S.C. § 1738, federal courts give preclusive effect to a state-court judgment whenever the courts of the state from which the judgment emerged would do the same." Richardson v. Miller, 101 F.3d 665, 668 (11th Cir. 1996) (citation omitted). Because the First Lawsuit was resolved by Georgia courts, Georgia law applies. "In Georgia, the doctrine of res judicata prevents the re-litigation of all claims which have already been adjudicated, or which could have been adjudicated, between identical parties or their privies in identical causes of action." Shuman v. First Guar. Mortg. Corp., CV 419-055, 2019 WL 5198470, at *3 (quoting Karan, Inc. v. Auto-Owners Ins., 629 S.E. 2d 260, 262 (Ga. 2006)) (internal quotation marks omitted).

A party trying to invoke res judicata based on a prior judgment must establish three prerequisites: "(1) identity of parties, (2) identity of the causes of action, and (3) adjudication on the merits by a court of competent jurisdiction in which the parties had a full and fair opportunity to litigate the relevant issues." Id. (quoting Akin v. PAFEC Ltd., 991 F.2d 1550, 1556 (11th Cir. 1993)).

10

### III. DISCUSSION

Defendants move to dismiss Plaintiff's Complaint based on res judicata. (Doc. 45, at 2.) They argue Plaintiff put at issue the same facts in her Superior Court action against the School District nearly four years ago. (Id.) Although Plaintiff only brought a claim under the Open Records Act in the Superior Court, they argue she cannot now be heard on additional claims that arise from the same nucleus of operative facts. (Id.) As such, Defendants argue Plaintiff was required to plead her discrimination and retaliation claims arising out of the same facts in Superior Court and cannot do so now. (Id.) Plaintiff argues her suit is not barred by res judicata. (Doc. 48.)

As outlined above, "[r]es judicata prevents plaintiffs from bringing claims related to prior decisions when 'the prior decision (1) was rendered by a court of competent jurisdiction; (2) was final; (3) involved the same parties or their privies; and (4) involved the same causes of action.'" Rodemaker v. City of Valdosta Bd. of Educ., No. 22-13300, 2024 WL 3643133, at *4 (11th Cir. Aug. 5, 2024) (quoting TVPX ARS, Inc. v. Genworth Life & Annuity Ins., 959 F.3d 1318, 1325 (11th Cir. 2020)). "The party asserting res judicata bears the burden of showing that the later-filed suit is barred." Id. at *6 (citation and quotation marks omitted and alteration adopted). Thus,

11

Defendants bear the burden here.   The Court addresses each element below.

## A. Court of Competent Jurisdiction and Final Judgment

Defendants assert "[i]t cannot be disputed that the final judgment in the [Superior Court] action . . . is an adjudication on the merits by a court of competent jurisdiction." (Doc. 45, at 23 (citing Doc. 40-1).)   Plaintiff does not dispute the Superior Court is a court of competent jurisdiction or that it issued a final judgment. (Doc. 48, at 15.)   Plaintiff disputes the cause of actions and parties matching, which the Court addresses below.   (Id.)   As such, the Court finds the Superior Court is a court of competent jurisdiction and issued a final judgment.

## B. Cause of Action

To determine whether two cases involve the same cause of action for res judicata purposes, the inquiry concerns "the substance, and not the form, of the two proceedings." Rodemaker, 2024 WL 3643133, at *9 (quoting Trustmark Ins. v. ESLU, Inc., 299 F.3d 1265, 1270 (11th Cir. 2002)) (quotation marks omitted).   "We ask whether the claims 'arise out of the same nucleus of operative facts, or are based upon the same factual predicate." Id. (citations and quotation marks omitted and alterations adopted).   "When a court enters judgment on the merits, the effect of the judgment extends to the litigation of

12

all issues relevant to the same claim between the parties, whether or not raised at trial." Simplis v. JP Morgan Chase Bank, No. CV 417-183, 2018 WL 11217094, at *2 (S.D. Ga. May 22, 2018) (quoting Kaspar Wire Works, Inc. v. Leco Eng'g & Mach., Inc., 575 F.2d 530, 535 (5th Cir. 1978)) (internal quotation marks omitted and alteration adopted). "Causes of action share a nucleus of operative fact if 'the same facts are involved in both cases, so that the present claim could have been effectively litigated with the prior one.'" Rodemaker, 2024 WL 3643133, at *9 (quoting Lobo v. Celebrity Cruises, Inc., 704 F.3d 882, 893 (11th Cir. 2013)); see also N.A.A.C.P. v. Hunt, 891 F.2d 1555, 1561 (11th Cir. 1990) ("Res judicata applies not only to the precise legal theory presented in the prior case, but to all legal theories and claims arising out of the same nucleus of operative fact." (citation omitted)). But if full relief was unavailable in the prior case, res judicata will not bar the second. Id. (citation omitted).

Plaintiff only brought an Open Records Act claim in Superior Court, yet Defendants argue she pled and attempted to place at issue the facts she contends demonstrate discrimination and retaliation. (Doc. 45, at 15.) Defendants argue a comparison of the pleadings here and the Superior Court action demonstrate the facts were identically pled in both cases. (Id. at 15-17.) They argue "Plaintiff placed at issue almost every

13

one of those facts at the [Superior Court trial] in which a final judgment was rendered." (Id. at 17.) Defendants assert Plaintiff cannot now plead claims she could have asserted, but chose not to, in the Superior Court action arising out of the same facts. (Id. at 18.)

In response, Plaintiff argues none of the rights and issues in the two cases are identical, so Defendants failed to show her claims are barred by res judicata. (Doc. 48, at 11.) She acknowledges many of the allegations in the two suits are similar but argues the causes of actions are based on different allegations of misconduct. (Id. at 11-12.) Plaintiff asserts the misconduct in the Superior Court action was the School District's failure to respond to the Open Records Act request, but here, it is Defendants' failure to grant her professional advancement opportunities and employment privileges like her similarly situated white counterparts. (Id.) Plaintiff's argument is that "[s]eparate allegations of misconduct constitute separate causes of action." (Id. at 12 (citing Pleming v. Universal-Rundle Corp., 142 F.3d 1354 (11th Cir. 1998)).)

The Court must determine whether this "case arises out of the same nucleus of operative facts, or is based up on the same factual predicate, as [the] former action." TVPX ARS, Inc., 959 F.3d at 1325 (citation and quotation marks omitted). The Court

14

finds the claims in both the Superior Court action and here grow out of the same nucleus of operative facts – the alleged racial discrimination Plaintiff faced at the hands of the School District and those involved with it.   While the Superior Court action involved a violation of the Open Records Act, it involved records Plaintiff sought to support her discrimination and retaliation claims.   Those are the exact claims asserted here. The Complaint and the complaint in the Superior Court action both recap Plaintiff's career and the School District's long history of unlawful discrimination.  (Doc. 40; Doc. 45-1.)   The Superior Court complaint rehashes the same events that serve as the basis of this Complaint – including Plaintiff's desire to be hired as Superintendent, not being considered for the job, and submitting a complaint of discrimination to the BOE after they failed to interview her and hired someone else.  (Doc. 45-1, at 7-10.)   While the Superior Court action dealt with the School District's failure to produce responsive documents to Plaintiff's Open Records requests, she alleged they did so "in an effort to hide their overt acts of race discrimination and retaliation against African American employees like [Plaintiff]."  (Id. at 12.)   In this case, Plaintiff asserts the same nucleus of operative facts, outlining her treatment throughout her long tenure with the School District.  (Doc. 40.) The biggest difference between the allegations in this Complaint

15

and the Superior Court complaint is that she includes the Superior Court findings and evidence as support for her allegations of discrimination and retaliation here. (Doc 40, at 27-30.) Beyond these additions, the Complaint contains almost identical allegations of Plaintiff's treatment. "Res judicata applies not only to the precise legal theory presented in the prior case, but to all legal theories and claims arising out of the same nucleus of operative fact." Rodemaker, 2024 WL 3643133, at *9 (citation and quotation marks omitted). The claims here arise out of the same nucleus of operative fact as the Superior Court action, thus making them the same cause of action for res judicata purposes.

Plaintiff tries to argue she could not have raised her present claims in her prior suit because she did not yet have evidence of race discrimination and retaliation, she only had suspicions, and she did not possess the evidence until the Superior Court compelled defendants to turn over evidence of racial discrimination. (Doc. 48, at 4; Doc 53-2, at 5-6.) Furthermore, she argues she had not yet exhausted her administrative remedies because her EEOC charge was and is still pending. (Doc. 48, at 4; Doc. 53-2, at 6.) Defendants argue these assertions are irrelevant to the disposition of the res judicata arguments. (Doc. 55, at 5-6.)

The Court is not persuaded by Plaintiff's argument about not having the relevant evidence until the conclusion of the Superior Court case.    As outlined above, the majority of Plaintiff's Complaint matches her Superior Court complaint. (See Doc. 45-1.)   The extra allegations in this Complaint citing the Superior Court Judge's ruling do not change the nature of the allegations.    Discovery, conducted after the initiating suit, would have given Plaintiff the avenue to uncover the evidence necessary to prove her claims.    Thus, Plaintiff's arguments are insufficient justification for why she did not bring these claims in Superior Court.

As to the EEOC charge, the Eleventh Circuit has "held that the fact a plaintiff did not have when [s]he filed [her] first lawsuit a right to sue letter that was necessary for the claim [s]he raised in [her] second lawsuit does not prevent it from being barred by res judicata." Rodemaker, 2024 WL 3643133, at *10 (citing Jang v. United Techs. Corp., 206 F.3d 1147, 1149 (11th Cir. 2000)).    Thus, Plaintiff's argument that she could not have brought her discrimination and retaliation claims in Superior Court because she did not yet have her EEOC right to sue letter is irrelevant to the Court's analysis.    Therefore, the Court finds the cause of actions the same for res judicata purposes and turns to the parties' similarity.

17

## C. Parties

For res judicata to apply, both lawsuits must involve the same parties or ones in privity with them. <u>Rodemaker</u>, 2024 WL 3643133, at *7. Defendants argue Plaintiff and the School District are parties to both actions, so the parties are the same for res judicata purposes. (Doc. 45, at 19.) As to the individual school board members and the superintendent, Defendants argue they are in privity with the School District, the named defendant in Superior Court. (<u>Id.</u> at 20.) In response, Plaintiff asserts the individual Defendants could not have been included in the Superior Court action because they were not responsible under the Open Records Act to produce responsive records. (Doc. 48, at 14.)

The Eleventh Circuit has defined privity "somewhat circularly . . . as the relationship between one who is a party of record and a nonparty that is sufficiently close so a judgment for or against the party should bind or protect the nonparty." <u>Rodemaker</u>, 2024 WL 3643133, at *7 (quoting <u>Hunt</u>, 891 F.2d at 1560) (internal quotation marks omitted). The Supreme Court has a non-exhaustive list of factors that favor a finding of privity:

> (1) the nonparty agreed to be bound by the litigation of others; (2) a substantive legal relationship existed between the person to be bound and a party to the judgment; (3) the nonparty was adequately represented by someone who was a party to the suit;

18

(4) the nonparty assumed control over the litigation in which the judgment was issued; (5) a party attempted to relitigate issues through a proxy; or (6) a statutory scheme foreclosed successive litigation by nonlitigants.

Id. (citations omitted).

The Superior Court action was filed by Plaintiff against Charlton County Schools — the School District named as a Defendant here. (Doc. 45-1, at 2.) Thus, Plaintiff and the School District are the same Parties. But there are additional Defendants here that were not in the Superior Court action: Lairsey, the Superintendent; Curtis Nixon, member of BOE; Dr. Matthew P. Sands, member of BOE; John Canaday, member of BOE; Lucille Hannans, member of BOE; and Pender Lloyd, member of BOE. (Doc. 40, at 4-6.) Defendants argue the superintendent and individual BOE members are in privity with the School District, thus satisfying the res judicata element. (Doc. 45, at 20.) Defendants argue Plaintiff's allegations against both the superintendent and individual BOE members were taken "under color of law" as agents, employees, or board members of the School District. (Id. at 21.) In response, Plaintiff again argues that the individual Defendants could not have been part of the Open Record claim because they had no duty to produce responsive records. (Doc. 48, at 14.) She asserts that because the conduct at issue is different, the individual Defendants are not in privity with the School District. (Id.)

19

While the Court agrees with Plaintiff that the individual
Defendants were not parties in the Superior Court action because
they were not liable under the Open Records Act, that does not
mean she could not have included them as defendants if she
brought discrimination and retaliation claims.  Thus, the Court
finds this argument without merit and turns to whether the
individual Defendants are in privity with the School District
for res judicata purposes.

Plaintiff lists the individual Defendants in their
individual and official capacities, but then brings each claim
against them in their individual capacities only. (Doc. 40, at
1, 30, 33, 36, 38.)  Defendants argue that since "they were
alleged to be operating as agents and under color of law in
their individual capacities as agents, employees, [and]
representatives of the School District, they are in privity with
the School District." (Doc. 45, at 21 (citing Echeverria v.
Bank of Am., N.A., 632 F. App'x 1006, 1008 (11th Cir. 2015)).)
Defendants assert the School District represented the interests
of the individual Defendants in Superior Court because it
objected and resisted the introduction of all evidence Plaintiff
claimed demonstrated discrimination and retaliation. (Id.)
They argue privity exists because the individual Defendants,
non-parties, were adequately represented by the School District,
a party to the suit. (Doc. 52, at 14 (citing Taylor v.

20

Sturgell_, 553 U.S. 880, 894-95 (2008)).)   They also argue the BOE members are responsible for and control litigation involving the School District, thus on that basis alone, they are in privity with the School District.   (Id. at 15.)

Claims against individuals in their official capacities are generally treated as a claim against the entity.   Rodemaker, 2024 WL 3643133, at *7 (citing Kentucky v. Graham, 473 U.S. 159, 165-66 (1985)).   Although Plaintiff names the individual Defendants in both their official and individual capacities in the Complaint's caption, she brings the claims against them only in their individual capacities.   (Doc. 40, at 1, 30, 33, 36, 38.)   Thus, there is not automatic privity from suing them in their official capacity.   See Rodemaker, 2024 WL 3643133, at *8. Nevertheless, the Court finds privity between the individual Defendants and the School District because the allegations against the individual Defendants all pertain to actions taken through their involvement with the School District and the BOE. (Doc. 40, at 30-40.)

As the Eleventh Circuit has explained, "[w]hen one party's actions are _legally_ another party's actions, those two parties have the kind of substantive legal relationship that establishes privity." Rodemaker, 2024 WL 3643133, at *8 (citation omitted and emphasis in original).   The individual Defendants are the School District's Superintendent and members of the BOE.   (Doc.

40, at 4-6.)   Plaintiff alleges the BOE made decisions for the School District, including hiring KC&A to assist in the Superintendent search, deciding who to interview, and ultimately voting on the new Superintendent.   (Id. at 19, 21, 24.)   She also alleges the "School District, by and through its agents, including Superintendent, and each member of its [BOE]," discriminated against her.   (Id. at 30.)   Thus, by her own allegations, the individual Defendants were *agents* of the School District.     Although Plaintiff identifies the individual Defendants in their individual capacities, she seeks liability for actions they took on behalf of the BOE, and ultimately the School District.   Plaintiff's allegations refer to actions the individual Defendants took in their capacity as board members, and only the BOE and School District, as entities, could take those actions.   Based on these findings, the Court finds privity exists because the individual Defendants' relationship with the School District is so close as to border on "near identity." Rodemaker, 2024 WL 3643133, at *8 (citing Harmon Indus., Inc. v. Browner, 191 F.3d 894, 903 (8th Cir. 1999)).

**D. Conclusion**

Based on the foregoing, the Court finds Defendants met their burden of showing this suit is barred by res judicata. They showed the prior decision issued by the Superior Court was rendered by a court of competent jurisdiction, was final,

involved the same parties or their privies, and involved the same causes of action. Rodemaker, 2024 WL 3643133, at *4 (quoting TVPX ARS, Inc., 959 F.3d at 1325). As such, Defendants' motion to dismiss Plaintiff's Complaint (Doc. 45) is **GRANTED.**

### E. Collateral Estoppel

In response to Defendants' motion to dismiss, Plaintiff argues Defendants are collaterally estopped from relitigating whether evidence of race discrimination exists. (Doc. 48, at 15.) Defendants argue the Court should not consider this assertion because it is asserted without legal grounds and was inappropriately raised in a response brief. (Doc. 52, at 16-17.)

Collateral estoppel prevents parties from relitigating issues which were actually litigated and decided in a previous adjudication. Cmty. State Bank v. Strong, 651 F.3d 1241, 1264-65 (11th Cir. 2011) (citation omitted). Because the Court finds Plaintiff's claims barred by res judicata, it does not address Plaintiff's collateral estoppel arguments.

### IV. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendants' motion to dismiss Plaintiff's second amended complaint under the doctrine of res judicata (Doc. 45) is

**GRANTED.**   The Clerk is **DIRECTED** to **TERMINATE** all pending motions and deadlines and **CLOSE** this case.

**ORDER ENTERED** at Augusta, Georgia, this *19th* day of September, 2024.

_____
HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA